UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KEVIN COOK, <br><br> and <br><br> CABELL GOODMAN, <br><br>     *Plaintiffs,* <br><br> v. <br><br> ADVON CORPORATION, a Florida corporation, <br><br>     *Defendant.* | Civil Action No. 3:24-cv-656 |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiffs Kevin Cook and Cabell Goodman, by counsel, pursuant to Rule 15 (a)(2) of the Federal Rules of Civil Procedure, offer the following Reply Memorandum in Support of their Motion for Leave to Amend their Complaint.

ARGUMENT

### 1. The Anti-Retaliation Provisions of Va. Code § 40.1-27.3 Should Be Read To Protect Post-employment Conduct.

The Defendant, Advon Corporation, asserts that the Motion for Leave is futile because the definition of "employee" in Title 40.1 of the Virginia Code is written in the present tense. (ECF No. 22, pp. 4-5.) Advon argues from this that the Court should interpret the statute narrowly to mean that *former* employees are not within the definition and that, as a result, Virginia Code § 40.1-27.3 does not protect post-employment conduct. Advon points to no Virginia authority supporting its position.

1


Advon's suggestion that this Court must interpret the statute narrowly fails because Code § 40.1-27.3 is a remedial statute and, under Supreme Court and Fourth Circuit precedent, must be construed broadly to afford the Act's protection to all employees who engage in activity protected by the statute.

The General Assembly enacted Code § 40.1-27.3 in the same session as the Wage Payment Act,[1] as part of a set of new statutes intended to afford protections to workers. Like the Wage Payment Act, Code § 40.1-27.3 is remedial, because its purpose is to protect workers not otherwise in a position to protect themselves. *See Neal v. Fairfax Cty. Police Dep't*, 295 Va. 334, 343, 812 S.E.2d 444, 448 (2018) (setting out characteristics of remedial statutes); *Board of Supervisors v. Rhoads*, 294 Va. 43, 51, 803 S.E.2d 329, 333 (2017); *see also Lewis v. City of Alexandria*, 287 Va. 474, 479, 756 S.E.2d 465, 469 (2014) (anti-retaliation provision of Virginia Fraud Against Taxpayers Act, Code § 8.01-216.8, deemed to be remedial); *Morrison v. George Mason Univ.*, 113 Va. Cir. 77, 78 (Fairfax Feb. 6, 2024) (Fraud and Abuse Whistle Blower Protection Act, Va. Code § 2.2-3009, *et seq.*, held remedial statute).

The Fourth Circuit has, in a similar case, held that a remedial statute that provides protection to "employees" (without distinguishing whether the employee is current or former) should be interpreted as covering both current and former employees, regardless of whether the protected conduct took place during or after the

---

[1] The Virginia Wage Payment Act, Va. Code § 40.1-29, is a remedial statute and is to be construed liberally to protect employees. *Campbell v. Groundworks Operations, LLC*, 82 Va. App. 580, 587, 908 S.E.2d 136, 139 (2024) (holding that 2020 amendments to Wage Payment Act transformed Act from regulatory to remedial).

2

employment term.

In that case, *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008), the Fourth Circuit reversed the District Court's holding that the anti-retaliation provision of the FLSA, which is substantially the same as Code § 40.1-27.3,[2] excluded former employees. The Fourth Circuit noted the remedial purpose of the FLSA's anti-retaliation provision, noted that the "FLSA and Title VII contain identical general definitions of 'employee,'" and applied the Supreme Court's rationale from *Robinson v. Shell Oil Co.*,[3] in which the Supreme Court held that, for purposes of Title VII's retaliation provision, "employee" includes both current and former employees. *Darveau v. Detecon, Inc.*, 515 F.3d at 342. In this Court's examination of the Code § 40.1-27.3, *Robinson v. Shell Oil* provides the proper approach for parsing this remedial statute.[4]

Code §§ 40.1-27.3 (a)(1) and (5) do not expressly limit their application to current employees; rather, these sections prohibit employers from taking retaliatory action against an "employee," without any temporal qualifier. *Cf. Robinson v. Shell*

---

[2] Compare 29 U.S.C.S. § 215 (a)(3) ("discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding … or has testified or is about to testify in any such proceeding…") with Va. Code § 40.1-27.3 (a) (1) and (5) ("discharge … threaten, discriminate against, or penalize an employee… because the employee … reports a violation … to any governmental body [or] testifies before any governmental body … conducting an investigation, hearing, or inquiry into any alleged violation by the employer ….").

[3] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-46 (1997).

[4] Although its decision is not binding on this Court, the District Court for the Middle District of Florida followed *Robinson v. Shell Oil* in holding that the Florida Whistleblower Act applied to former employees engaged in post-employment protected conduct. *Kissinger-Campbell v. Harrell*, 2009 U.S. Dist. LEXIS 5695, at *18-22 (M.D. Fla. Jan. 12, 2009).

3

*Oil*, 519 U.S. at 341 ("there is no temporal qualifier in the statute such as would make plain that [it] protects only persons still employed at the time of the retaliation"). Likewise, the definition of "employee" does not include a temporal qualifier. *Cf. id.* at 342 ("definition of 'employee' likewise lacks any temporal qualifier and is consistent with either current or past employment"). Code § 40.1-2 defines "employee" as "any person who, in consideration of wages, salaries or commissions, may be permitted, required or directed by any employer to engage in any employment directly or indirectly." Va. Code § 40.1-2. The statutory definition, however, is not an absolute prescription: All of the definitions in that Code section are prefaced with the statement, "unless the context clearly requires otherwise." *Id*.

Grammatically, this statutory definition of "employee" is written in the passive voice and uses the auxiliary modal verb "may" followed by the infinitive verb "to engage." Modal auxiliary verbs, or "helping" verbs, are added to basic verbs to indicate mood or tense to add specific shades of meaning. *Altizer v. Commonwealth*, 63 Va. App. 317, 324, 757 S.E.2d 565, 568 (2014). Modal auxiliary verbs may express necessity, uncertainty, ability, or permission. *Id*. They cannot be understood or defined in isolation but rather obtain meaning from their context. *Id*. In this usage, "may" can equally express either permission or uncertainty.

As a modal verb, the word "may" in conjunction with a passive infinitive verb, is used to connote "be at liberty to [or] be permitted by circumstances to."[5] Consistent

---

[5] Oxford English Dictionary, "may (v.1), sense II.i.5.b," March 2025, https://doi.org/10.1093/OED/3333189731, last visited May 6, 2025).

4

with this definition, Virginia Courts have held that the word "may" ordinarily imports permission or possibility. *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70, 844 S.E.2d 676, 682 n. 5 (2020) (citing multiple cases and authorities); *Board of Supervisors v. State Corp. Comm'n*, 292 Va. 444, 454, 790 S.E.2d 460 (2016). In this sense, the statute's definition of "employee" means any person whom an employer has, in the employer's discretion, ever allowed to work. The definition, however, contains no language limiting "employee" status to the period during which the employer permits the employee to work.

Alternatively, as a modal verb, "may" is also used to connote a non-limiting example. *See IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 906 (Fed. Cir. 2020). In that usage, to say that a condition "may" occur implicitly suggests that the condition also "may not" occur. *Id.* In this sense, the statutory definition of "employee" would include, <u>but not be limited to</u>, a person whom an employer may currently "permit or suffer to work." Va. Code § 40.1-2. In other words, an employee *may* be someone permitted to work, or *may* be a former employee, or *may* be an applicant for employment that the employer has not hired.

Regardless of its ambiguous interpretation, the definition's verb tense does not, as Advon argues, pin down its meaning.[6] As noted above, Code § 40.1-2 states that all definitions must give way when the context requires it. Other parts of Title 40.1

---

[6] As the Supreme Court noted in *Robinson*, "[t]he argument that the term 'employed,' … is commonly used to mean 'performing work under an employer-employee relationship,' … begs the question by implicitly reading the word 'employed' to mean 'is employed.'" *Robinson v. Shell Oil Co.*, 519 U.S. at 342.

5

use the term "employee" in a context that plainly refers to prospective, current, or former employees, but without using any such adjectives. For instance, in Code § 40.1-28.7:1 (B), an "employee" may bring a civil action against an "employer" who fails to hire the "employee" on the basis of a genetic test. An unhired applicant would, perforce, be in the class of "employees" that could bring such an action. *Cf. Robinson v. Shell Oil*, 519 U.S. at 342 ("one may hire individuals to be employees, but one does not typically hire persons who already are employees"). Code § 40.1-28.7:1 (B) does not make that distinction.

As another example, in Code § 40.1-29 (A), an "employer" is obligated to pay a discharged "employee" all wages due "on or before the date on which he would have been paid for such work had his employment not been terminated." Code § 40.1-29 (A). An "employer" who fails to make that final post-employment payment to a discharged "employee" is subject to a civil suit brought by the "employee" (Code § 40.1-29 (J)). In that context, the term "employee" must also include *former* employees in the class of persons who may file such a suit. *Cf. Robinson v. Shell Oil*, 519 U.S. at 343 (discharged "'employee' … is necessarily a former employee"). Even so, Code § 40.1-29 (J) does not make that distinction.

Likewise, Title 40.1 includes remedial provisions for the "reinstatement of the employee," a remedy that would apply only to *former* employees. See Va. Code §§ 40.1-27.3(C), -33.1, -33.2; *cf. Robinson v. Shell Oil*, 519 U.S. at 342 ("because one does not 'reinstate' current employees, that language necessarily refers to former employees"). Similarly, Code § 40.1-27.3 has a limitations period within which a terminated

"employee" must file suit. See Va. Code § 40.1-27.3(C) (one year). Like the others, even though the statute does not distinguish between current and former employees, this provision could necessarily only apply to a *former* employee. *Cf. Robinson v. Shell Oil*, 519 U.S. at 343. And yet the statute does not use the adjectives "current" or "former" to modify the noun "employee."

The term "employee" in Title 40.1 freely denotes both current and former employees. Accordingly, the Court should find that the word is ambiguous and interpret it in accordance with the "familiar canon of statutory construction" for such statutes. *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (remedial statutes to be construed broadly); *see Dennis v. Higgins*, 498 U.S. 439, 443, (1991); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 684 (1978). Virginia Courts also construe remedial statutes liberally, "so as to suppress the mischief and advance the remedy in accordance with the legislature's intended purpose." *University of Virginia v. Harris,* 239 Va. 119, 124, 387 S.E.2d 772, 775 (1990) (citation and internal quotation marks omitted) (emphasis removed). "All other rules of construction are subservient to that intent." *Id*.

The anti-retaliation provisions of Title 40.1, including §§ 40.1-27.3 and –33.2, reflect the legislative intent to insulate former employees against an employer's efforts to chill their protected conduct. To not cover former employees, for otherwise covered post-employment conduct, would "effectively vitiate much of the protection afforded" by these sections. *Robinson v. Shell Oil*, 519 U.S. at 345; *see Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Consistent with the broad and liberal

7

construction to which this statute is entitled, this Court should conclude that Code § 40.1-27.3 protected these Plaintiffs when they filed this lawsuit and grant the Plaintiffs' Motion for Leave to Amend.

2. **Plaintiffs Do Not Seek Relief Under Code § 40.1-33.2: Plaintiffs Seek Declaratory Judgment That Defendant's Threatened Lawsuit Would Be A Violation Of Code § 40.1-33.2.**

Virginia Code § 40.1-33.2 (B) provides an aggrieved party with "appropriate remedies" for a claim of discrimination such as "reinstatement of the employee and recovering lost wages and an additional amount equal to the lost wages as liquidated damages." To be clear: Plaintiffs' proposed Count V is not a complaint under Va. Code § 40.1-33.2. Count V does not seek any of the statutory remedies under that Code section. Count V seeks only a declaratory judgment that the Defendant's threatened litigation is retaliatory and, if carried out, would be a violation of the statute.

"A declaratory judgment is only a binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 613 n.6 (4th Cir. 2021) (cleaned up). "The purpose of a declaratory judgment is usually the prevention of a wrong, but it commands nothing…." *Id.*

Advon's argument that Plaintiffs are bringing a claim against it under Code § 40.1-33.2 is therefore misplaced. The Court should reject that argument and grant Plaintiffs' Motion for Leave to Amend.

3. **Advon Is Not Prejudiced By The Timing Of Plaintiffs' Motion For Leave.**

Advon claims that it is prejudiced by the timing of the filing of the Motion for

8

Leave to Amend and argues that Plaintiffs are not acting in good faith by delaying the filing of the Motion for Leave to Amend. (ECF No. 22, p. 8). It is not apparent from Advon's Memorandum what it means by "delay."

As noted in the proposed First Amended Complaint, the Cease and Desist letters that gave rise to the Plaintiffs' retaliation claims were sent on April 14, 2025, and threatened imminent litigation. (ECF No. 20-1, ¶ 15). The Motion for Leave to Amend was filed four days later, on April 18, 2025. In the interim, as alleged in the proposed First Amended Complaint, Plaintiffs sought to have Advon retract the threats of litigation. *Id.*

On April 15, 2025, Plaintiffs' counsel conferred telephonically with Elizabeth Bloch, Esquire, one of Advon's counsel, regarding the Cease and Desist letters and advised that Plaintiffs took the position that the threats in these letters were retaliatory. Ms. Bloch responded that matters regarding the Cease and Desist letters would be addressed by Eric Miller, Esquire, who is also Advon's counsel. Ms. Bloch advised that she and Mr. Miller were scheduled to consult with their client on April 16 regarding some other discovery matters. Plaintiffs' counsel requested that they determine whether Advon intended to go forward with the retaliatory threat and advise immediately. No response was forthcoming on or after April 16. Plaintiffs filed the Motion for Leave to Amend on April 18.

Plaintiffs have not delayed filing this Motion.

More than four months remain before trial and more than two months remain before the discovery cutoff in this case. The Court's Initial Pretrial Scheduling Order

does not set a deadline for Motions for Leave to Amend but only requires that they comply with Rule 15, which permits such motions to be made before, during, or after trial. Fed. R. Civ. P. 15(b). Advon is not prejudiced by the timing of this Motion. The Court should, therefore, grant the Plaintiffs' Motion for Leave to Amend.

### 4. The Defend Trade Secrets Act Would Immunize These Plaintiffs From Advon's Threatened Lawsuits.

The Defend Trade Secrets Act, 18 U.S.C. § 1833(b)(1) ("DTSA"), grants immunity "under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence … to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law…." *Id.* (cleaned up). In the proposed First Amended Complaint, Plaintiffs allege that this section protects their disclosure to counsel of the documents that Defendant claims are proprietary, or confidential, or trade secrets and that, as a result, Advon's threatened litigation is not well-founded.

Defendant argues that the DTSA does not protect Plaintiffs' disclosure to their counsel, or to Defendant's counsel, because "reporting or investigating a suspected violation of law," the term used in the DTSA, does not include disclosing such information to counsel in preparation for filing a lawsuit or to producing such information to Defendant in discovery. (See ECF No. 20, p. 10) ("Plaintiffs' filling of the lawsuit was self-directed and for monetary gain – not to 'investigate' a violation of law.")

The weight of authority runs against Advon's argument. *See, e.g., FirstEnergy Corp. v. Pircio*, 524 F. Supp. 3d 732, 743 (N.D. Ohio 2021) (employee providing

10

documents to counsel has DTSA immunity); *Gatti v. Granger Med. Clinic, P.C.*, 529 F. Supp. 3d 1242, 1266 (D. Utah 2021) (alleged confidential documents provided to counsel for production in discovery in False Claims Act suit deemed immunized disclosure); *Christian v. Lannett Co.*, 2018 U.S. Dist. LEXIS 52793, at *13 (E.D. Pa. Mar. 29, 2018) (immunized disclosure to counsel in relation to Plaintiff's underlying discrimination suit and to Defendant's counsel in discovery). Clearly, the Plaintiffs are entitled to rely on the DTSA's grant of immunity in sharing these alleged documents with their counsel – and with Advon's counsel – as a part of this litigation.

The Court should reject Advon's argument that the DTSA does not immunize the Plaintiffs and grant the Plaintiffs' Motion for Leave to Amend.

### 5. Declaratory Judgment Is Proper In The Face Of Advon's Threatened Lawsuits.

As alleged in the proposed Amended Complaint, Advon has threatened to sue the Plaintiffs. Each of the Cease and Desist letters begins, "Our law firm has been retained to represent ADVON Corporation ('Advon') to provide legal notices and/or pursue claims against [Plaintiff], if necessary, related to any unauthorized access, possession, retention and/or disclosure of Advon's confidential information and to ensure the return of all information, equipment, and property of Advon." (ECF No. 20-1 ¶ 51). After presenting a list of demands, each "Cease and Desist" letter closes with the statement, "Advon is further weighing moving forward with serious legal measures and to pursue the maximum remedies allowed by law against [Plaintiff]." *Id*.

A declaratory judgment complaint can present a sufficiently ripe actual

controversy arising out of actual antagonistic assertions and denials of rights, even though no consequential relief is claimed at the time of the dispute. A federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought will serve a useful purpose in clarifying and settling the legal relations in issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 375 (4th Cir. 1994).

Within that context, Courts have regularly held that a threat of litigation is enough to create a justiciable controversy for purposes of declaratory judgment. *Granados v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 109777, at *7 (E.D. Va. Aug. 19, 2015); *Kettler Intl, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 847 (E.D. Va. 2014) (threat of litigation is sufficient to establish actual controversy). Such a threat exists in this case and has created an antagonistic assertion of rights and a justiciable controversy that can and should be resolved by declaratory judgment.

The Court should therefore reject Advon's argument that declaratory judgment is improper in this case and grant the Plaintiffs' Motion for Leave to Amend.

## CONCLUSION

Advon has not shown that it will be prejudiced if this Court grants leave to amend the Complaint. The remainder of Advon's opposition to the Plaintiffs' Motion for Leave to Amend is an argument that the proposed First Amended Complaint is futile. For the reasons stated above, the Court should reject that argument. Moreover, much of Advon's argument is based on its *ipse dixit* interpretation of a relatively new statute and its unfounded prediction that the Advon interpretation is the only right

one. As this Court has previously noted, "'[u]nless a proposed amendment may *clearly* be seen as futile . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Lewis v. Jayco, Inc.*, 2019 U.S. Dist. LEXIS 148598, at *9 (E.D. Va. Aug. 29, 2019) (Lauck, J.) (emphasis original), quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). Advon has not advanced any argument that hits this high benchmark, and so the Plaintiffs' Motion for Leave to Amend should be granted.

                **KEVIN COOK**

                **CABELL GOODMAN**

                **By Counsel**

                \_\_/s/ Blackwell N. Shelley, Jr.\_\_\_\_
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB #41881)
Lila S. Shelley (VSB #100026)
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Virginia 23220
(804) 644-9700
(804) 278-9634 [fax]
shelley@scs-work.com
schulte@scs-work.com
lshelley@scs-work.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

    Elizabeth Bailly Bloch, Esquire
    THE KULLMAN FIRM APLC
    4605 Bluebonnet Boulevard, Suite A
    Baton Rouge, Louisiana 70809
    EBB@kullmanlaw.com

    Eric R. Miller, Esquire
    THE KULLMAN FIRM
    4605 Bluebonnet Blvd., Suite A
    Baton Rouge, Louisiana 70809
    EM@kullmanlaw.com

    *Counsel for Defendant*

                                                      */s/ Blackwell N. Shelley, Jr.*
                                                      Blackwell N. Shelley, Jr. (VSB # 28142)
                                                      Shelley Cupp Schulte, P.C.
                                                      3 W. Cary Street
                                                      Richmond, VA 23220
                                                      (804) 644-9700
                                                      (804) 278-9634 [fax]
                                                      shelley@scs.law
                                                      *Counsel for Plaintiff*